**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Israel G.M.,

Petitioner,

v.

DAVID VENTURELLA, in his capacity as Acting Director, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, U.S. Attorney General; DAREN MARGOLIN, Executive Office for Immigration Review; DAVID EASTERWOOD, Field Office Director of St. Paul Field Office for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations;

Respondents.

No. 0:26-cv-03643 (KMM/LIB)

**ORDER**

---

Petitioner Israel G.M. ("Mr. GM" or "Petitioner") has been detained by Immigration and Customs Enforcement since August 5, 2026. On August 14, 2026, through his counsel he filed a verified Petition for a Writ of Habeas Corpus. Pet., Dkt. 1. He claims that he is entitled to immediate release from custody because he has been out of custody since January 2023 on a bond pursuant to an order of an immigration judge, and his bond has not been properly revoked or cancelled. In addition, he claims that he is entitled to release because he was arrested without a valid administrative or judicial warrant. Respondents

answered the Petition on August 21, 2026, and they argue that it lacks merit. Resp., Dkt. 7. For the reasons that follow, the Petition is granted.

**BACKGROUND**

Mr. GM is a citizen of Mexico who has lived in the United States since October of 2005. Pet. at 4 (Parties ¶ 1); *id.* at 10 (Facts ¶ 1). He is married to a United States citizen from whom he is currently separated, and he has four children who are all U.S. citizens. *Id.* at 10 (Facts ¶ 1). Mr. GM has applied for cancellation of removal based on the fact that his children are citizens of this country and depend on him for their care. *Id.*

When Mr. GM came to the United States, he did so without inspection or admission, and he was not encountered by immigration authorities at the border. *See* Dkt. 8-1 at 3 ("Subject last entered the United State on an unknown date, at or near an unknown place and admitted illegal entry."). That changed in December 2022, when the Department of Homeland Security initiated removal proceedings against Petitioner. Pet. at 10 (Facts ¶ 2). DHS charged him with arriving in the United States at or near an unknown location at an unknown time and being present in the United States without having been admitted or paroled. *Id.*, Ex. B (Notice to Appear); Dkt. 8-3 at 1 (same). Upon the commencement of those removal proceedings, it appears Mr. GM was taken into custody and detained. But shortly thereafter, on January 26, 2023, Immigration Judge (IJ) Sarah Mazzie granted Mr. GM's request for a change in his custody status and ordered that he be "released from custody under bond of $5,000." Pet., Ex. A (IJ Order); *see also* Pet. at 2 (Introduction ¶ 3). Until his recent detention that led to the filing of this habeas case, Mr. GM has remained out on bond while the removal case proceeds.

On August 5, 2026, Supervisory Detention and Deportation Officer Nicholas P. Carey received a phone call from a Border Patrol agent of the Grand Forks, North Dakota sector. Carey Decl. ¶ 8, Dkt. 8. SDDO Carey states that the Border Patrol agent advised him that Mr. GM "is believed to be involved in alien smuggling activity along the northern border of the United States." *Id.* ¶ 9. After that SDDO Carey "conducted immigration checks and determined that [Petitioner] is currently in immigration proceedings and had been released on a $5,000 immigration bond." Dkt. 8-1 at 2. SDDO Carey also learned that while he was out on bond, Mr. GM was arrested and charged with domestic assault on July 2, 2023. *Id.* However, on February 27, 2024, the Rice County District Court acquitted Mr. GM of that charge. *Id.* at 3. SDDO Carey decided to take Mr. GM "back into ICE custody," a determination with which ICE's St. Paul Field Office of the Principal Legal Advisor agreed. *See id.* at 2 ("SDDO Carey subsequently received concurrence from SPM OPLA to take [Petitioner] back into ICE custody.").

On August 5, 2026, Mr. GM was arrested by ICE officers at his wife's home while Petitioner was there to pick up his two-year-old son, and he had his seven-year-old son in the vehicle. Pet. at 10–11 (Facts ¶ 4). Mr. GM was advised at the time he was taken into custody that there was a warrant for his arrest. Dkt. 8-1 at 3 (Form I-213 Record of Deportable/Inadmissible Alien); *see also* Dkt. 8-2 at 1 (Aug. 5, 2026 Form I-200 Warrant for Arrest of Alien concerning Petitioner). The administrative arrest warrant indicates that SDDO Carey determined there is probable cause to believe that Mr. GM is removable from the United States because of (1) his ongoing removal proceedings, and (2) statements

Mr. GM made or other reliable evidence that indicates his lacks immigration status. Dkt. 8-2 at 1.

Following his arrest, ICE agents took him to the Bishop Henry Whipple Building in Fort Snelling. Afterward, ICE transferred him to the Sherburne County Jail in Elk River, where he remains confined today. Pet. at 11 (Facts ¶¶ 6–7).

In his Petition, Mr. GM asserts that Respondents are unlawfully detaining him because they did not validly revoke his bond prior to taking him back into custody. Pet. at 12–14 (Claims for Relief ¶¶ 1–8). Second, he claims that he was unlawfully arrested in violation of the Fourth Amendment and Respondents exceeded their statutory authority in making a warrantless arrest. *Id.* at 14–15 (Count II ¶¶ 1–5).[1]

**DISCUSSION**

A writ of habeas corpus may be granted to any person who shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). That protection extends to those subject to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020). The petitioner has the burden to prove that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

[1] Mr. GM also asserts that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.* at 15 (Count III ¶¶ 1–3). Although Mr. GM has preserved this claim for appeal, it is foreclosed by the Eighth Circuit's ruling in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), and the Court does not address it further.

The parties disagree about what the law requires when a noncitizen has been released on bond by an IJ pending completion of deportation proceedings and the government seeks to re-detain him. Petitioner argues that once the IJ ordered his release on bond pursuant to 8 U.S.C. § 1226(a) in 2023, he could lawfully be taken back into custody only if the Attorney General revoked his bond pursuant to § 1226(b) and the applicable regulations. *See* Reply at 4; *see also* Pet. at 6–7 (Legal Framework ¶¶ 9–11). He argues that nothing in the record shows such a revocation occurred here, and Respondents cannot now justify his detention based on a new analysis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Pet. at 6 (Legal Framework ¶¶ 5–6.) According to Petitioner, his detention does not comply with the Due Process Clause of the Fifth Amendment because Respondents are detaining him without affording him the procedural protections required by law. Pet. at 12–14 (Claims for Relief ¶¶ 1–8). Respondents disagree. They assert that Mr. GM is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A) as that statute has been interpreted by the Eighth Circuit in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Resp. at 2. In addition, Respondents argue that Petitioner's bond was properly revoked pursuant to 8 U.S.C. § 1226(b) and the decision to revoke it is not subject to judicial review under 8 U.S.C. § 1226(e). Resp. at 4–6.[2] Petitioner has the better argument.

[2] Respondents also argue that "Petitioner's Counsel has filed an improper petition for relief" because counsel filed a verified petition on Mr. GM's behalf pursuant to 28 U.S.C. § 2242, but has not explained why Petitioner failed to personally verify his own petition, and the petition contains statements made on information and belief that are contradicted by the government's own evidence. *See* Resp. at 2–3. The Court disagrees. The government points to no controlling authority that counsel cannot file a verified petition on behalf of a client. Respondents have failed to demonstrate that Petitioner or his counsel have done anything improper in filing the Petition in this case.

## I. Section 1225(b)(2) and *Avila*

Start with the Respondents' assertion that this case is controlled by 8 U.S.C. § 1225(b)(2) and *Avila*. This position was rejected in another recent habeas case in this District with a similar set of facts—*Roberto B.Q. v. Lyons*, No. 26-cv-2656 (PJS/SGE), Dkt. 8, slip op. at 4 n.2 (D. Minn. June 10, 2026):

> Respondents argue that a prior discretionary release decision does not override Congress's mandatory detention command once DHS later detains an alien whose statutory status falls within § 1225(b)(2)(A). The problem for the government is that it has consistently asserted that [the petitioner] was detained – and then released – under § 1226(a), not § 1225(b)(2)(A)." "An agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Hernandez-Torres v. Mullin*, No. 26-cv-0214, 2026 WL 1430705, at *2 (D. Neb. May 21, 2026) (cleaned up) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 50 (1983)). "Put simply, the Government is not allowed to change horses midstream. It is stuck with the horse on which it rode into court" – here, § 1226. *Souleimane C. v. Blanche*, No. 26-CV-2215 (LMP/JFD), 2026 WL 1180075, at *3 (D. Minn. Apr. 30, 2026); *see also Silva v. Warden*, No. 26-CV-0131, 2026 WL 926725, at *1 (D. Neb. Apr. 6, 2026) ("Nothing in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) permits the government to effectively recategorize scores of immigrations who were conditionally paroled under § 1226(a)(2)(B).").

*Id.* (cleaned up).

While *Roberto B.Q.* involved a petitioner who was detained at the border and then conditionally paroled into the country through release on his own recognizance, *id.*, slip op. at 1–2, the same reasoning applies here. In both cases, immigration authorities funneled Mr. GM into a § 1226(a) process when they initially detained him, and that process provides greater protections for a noncitizen's liberty than the Respondents would now

extend in light of their new classification of him. *Cf. Sandhu v. Mullin*, No. 7:26CV5009, 2026 WL 1146643, at *3 (D. Neb. Apr. 28, 2026) (recognizing that an individual released at the border on his own recognizance receives a kind of conditional parole that creates a liberty interest akin to that of a criminal parolee). If anything, the argument that § 2126 controls is even stronger here than in either *Roberto B.Q.* or *Sandhu* because an IJ expressly released Mr. GM under that statute. It is, in essence, the law of the case. Therefore, the Court is not persuaded that Mr. GM's detention is authorized by 8 U.S.C. § 1225(b)(2)(A), and his detention is lawful only if Respondents properly took him back into custody pursuant to § 1226.

## II. Bond Revocation and Appropriate Process

### *Jurisdiction*

Turning to whether Respondents properly revoked Mr. GM's bond in taking him back into custody, the Court first addresses Respondents' contention that judicial review of this claim is barred by 8 U.S.C. § 1226(e). That provision removes federal court jurisdiction as follows:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).

However, this statute does not include any "explicit provision barring habeas review." *Demore v. Kim*, 538 U.S. 510, 511 (2003). While the Court cannot review a discretionary decision under § 1226(e), this provision does not deprive the Court of habeas

jurisdiction. *Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1217–18 (10th Cir. 2001) (holding that § 1226(e) "does not speak with sufficient clarity to bar jurisdiction pursuant to the general habeas statute" (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001))).

Moreover, the Petitioner here is not asking the Court to review the discretionary decision of proper immigration authorities to revoke his bond. Instead, he claims that he is being detained in violation of his due process rights because Respondents have failed to follow the appropriate procedures in taking him back into custody without actually revoking his bond. *See Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2nd Cir. 2020) ("Whether [a petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review." (quoting *Zadvydas*, 533 U.S. at 688)); *Hernandez v. Sessions*, 827 F.3d 976, 987 (9th Cir. 2017) (finding that § 1226(e) "does not … preclude habeas jurisdiction over constitutional claims or questions of law") (quotations omitted). The Court finds that it has jurisdiction to review Petitioner's bond-revocation claim.

***Revocation of Bond***

Turning to the merits of Petitioner's bond-revocation claim, Under § 1226, the government may arrest and detain an alien "[o]n a warrant issued by the Attorney General … pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The government may also "release the alien on—(A) bond of at least $1,500 . . .; or (B) conditional parole[.]" 8 U.S.C. § 1226(a)(2). Further, "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).

As other courts have recognized, the revocation provision in § 1226(b) "gives the government 'immense discretion.'" *Sandhu*, 2026 WL 1146643, at *4 (quoting *Singh v. Noem*, No. 2:26-cv-00427-KWR-KK, 2026 WL 766228, at *6 (D.N.M. Mar. 18, 2026)); *see also Ferrufino Guerrero v. Mullin*, No. 4:26-cv-3146, 2026 WL 1679263, at *5 (D. Neb. June 10, 2026) (same). However, that discretion is not unlimited. Indeed, "where a previous bond determination has been made by an immigration judge," a change should not be made to that ruling "absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981). This means that a bond revocation requires an individualized determination where the government must show changed circumstances that now make the noncitizen a flight risk or danger. *See O.F.C. v. Almodovar*, No. 25-cv-9816 (LJL), 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) (citing *Sugay*, 17 I. & N. Dec. at 640). And DHS's implementing regulation for § 1226(b) further indicates how an IJ's order of release may be revoked:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. § 236.1(c)(9).

Respondents argue that Mr. GM received all the process he was due and his bond was properly revoked because SDDO Carey heard from a Border Patrol agent that Petitioner was believed to be involved in alien smuggling. The Court does not doubt that a

noncitizen's involvement "in alien smuggling activity along the northern border of the United States" (Carey Decl. ¶ 9) is a sufficient change in circumstances that could justify the revocation of bond.[3] And if Respondents were to follow the appropriate legal process for revoking the IJ's bond determination and taking Petitioner back into custody, it may be that they could lawfully detain him pending the outcome of his removal proceedings. But the record here does not support a conclusion that Respondents properly revoked Mr. GM's bond.

Nothing before the Court indicates that Respondents have provided Mr. GM with the process he is entitled to receive when a bond revocation decision has been properly made. As explained in another recent habeas case in this District:

> [T]o lawfully re-detain [a noncitizen released on an IJ's bond order], Respondents would have had to provide him with a series of procedural protections: (1.) an immigration officer first would have had to have found a "change in circumstance" that justified the revocation of Sergio's release on bond, 8 C.F.R. § 236.1(c)(9), *Matter of Sugay*, 17 I. & N. Dec. at 640; (2.) Respondents would have needed to present [him] with a warrant stating a valid reason for his arrest, 8 USC § 1226(a); (3.) Respondents then would have had to provide [him] an opportunity to apply to an immigration judge for a bond redetermination hearing, 8 C.F.R. § 236.1(d)(1); and (4.) if the

[3] Petitioner urges the Court to reject the Respondents' evidence concerning his alleged engagement in smuggling activities for several reasons, including that Respondents offer mere allegations, provide no indication that he has been charged with or convicted of such conduct, and have not amended the charges of removability against him. *See* Reply at 5–6. While it is true that Respondents' evidence on this issue is thin, Petitioner points to no caselaw indicating that a federal district court is permitted to second-guess a bond revocation decision based on the strength of the evidence in support of that determination, and the Court will not do so here. Ultimately, the Court's determination in this case does not depend on any assessment that Respondents' failed to present sufficient evidence of Mr. GM's engagement in conduct that would provide a valid basis for a bond revocation. Instead, the Court reaches its conclusion on Respondents' failure to follow procedure.

> immigration judge denied his request, [he] would have had to be given an opportunity to appeal that decision to the BIA, 8 C.F.R. § 236.1(d)(3)(I).

*Sergio B.F. v. Mullin*, No. 26-cv-2992, 2026 WL 2198915 (NEB/DJF), (D. Minn. July 24, 2026), *R&R adopted* 2026 WL 2203679 (D. Minn. July 30, 2026). Here, with the exception, perhaps, of providing Mr. GM with a warrant stating a valid reason for his arrest, Respondents have not followed these steps.

First, Respondents point to nothing in the record indicating that an appropriate officer identified under the implementing regulation—8 C.F.R. § 236.1(c)(9)—exercised their discretion to revoke Mr. GM's bond. Under the regulation, the IJ's order of release on bond may be revoked by an appropriate district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge. 8 C.F.R. § 236.1(c)(9). There is no evidence before the Court that anyone with such a role was involved in any decision to revoke Petitioner's bond. Respondents do not argue that SDDO Carey, the Border Patrol agent who called him to convey the accusation of Mr. GM's alleged smuggling, nor the St. Paul ICE Field Office's Office of the Principal Legal Advisor are appropriate officers to exercise discretion under the regulation. Indeed, Respondents do not mention the regulation in their Response to the Petition at all.

Second, there is no evidence before the Court indicating that Respondents have given Mr. GM an opportunity to apply to an immigration judge for a bond redetermination hearing. Indeed, the record suggests that Respondents essentially ignored this regulatory requirement because they have taken the position that Petitioner is subject to mandatory

detention under *Avila*. But *Avila* did not involve a person facing a revocation of a bond previously granted by an IJ. *See* 170 F.4th at 1132 (noting that Avila entered the U.S. without inspection or admission in 2006 and 2016 and was first encountered by ICE agents in August 2025 during a traffic stop). While *Avila* likely means Mr. GM could be held without a bond hearing if arrested in the first instance today, it doesn't undermine the requirements of the regulations or *Matter of Sugay*. And finally, the absence of any opportunity for Petitioner to apply for an immigration judge's redetermination necessarily means that Mr. GM has not been given the opportunity to appeal a denial of that claim to the BIA.

As the *Sergio B.F.* court explained, requiring DHS officials to follow this process when revoking an IJ's bond order "makes sense," and "[t]o hold otherwise would nullify the role of immigration judges as officials representing an entirely separate branch of the Department of Justice, the EOIR [Executive Office for Immigration Review]." 2026 WL 2198915, at *4. "If DHS officials could subvert immigration judges' decisions without reason, then immigration judges would be entirely without purpose." *Id.* Here, because Mr. GM's "bond has not been lawfully revoked, the proper remedy is release." *Id.* at *5.[4]

---

[4] The Court has considered whether a bond hearing would be the appropriate remedy under the circumstances, but finds that it would not alter the reality that Mr. GM is currently in custody while the order releasing him on bond from the IJ is still operative. *See Roberto B.Q.*, slip op. at 5 (ordering release rather than a bond hearing where the petitioner was "detained while the order releasing him on his own recognizance remains operative") (quotations omitted).

For these reasons, the Court requires Respondents to release Mr. GM within 48 hours after the entry of this Order, subject to the conditions of his January 2023 order of release on bond.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Petitioner's Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED** as set forth in this decision.

2. Respondents must release Petitioner within 48 hours after entry of this Order, subject to the conditions of his January 2023 order of release on bond.

3. Respondents must file a notice on the docket within 24 hours after Petitioner's release advising the Court and opposing counsel that it has complied with the release.

**Let Judgment be entered accordingly**.

Date: October 6, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge